UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cr-00122-MOC-DSC

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| **DE'TERIO JATAVIOUS BRICE,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on defendant's Motion to Suppress. Defendant is charged by way of a one count Bill of Indictment with being a felon in possession of a firearm, to wit, a Taurus .40 caliber semiautomatic pistol. Defendant seeks to suppress his statement, in which he told the officer where to find the gun was and that it was his, and to suppress the subsequent discovery of the firearm in the car. For the reasons that follow, the Court finds that defendant's statement is subject to suppression as it was involuntarily made under <u>Miranda</u>, but that the firearm is not subject to suppression under the inevitable discovery doctrine.

**FINDINGS AND CONCLUSIONS**

**I.    Background**

An evidentiary hearing was held on the Motion to Suppress August 23, 2017, in Charlotte. At the hearing, Patrol Officer David Batson testified that he and another officer

–1–

encountered defendant during a patrol of the North Tryon neighborhood of Charlotte on December 13, 2016. The neighborhood was being patrolled due to recent robberies. According to the testimony, the officers were patrolling the neighborhood to deter robberies by being a presence and by looking for cars that did not belong.

While on patrol, the officers came across a vehicle that was being operated by defendant and another person. The vehicle drew the officer's attention as it was parked against the flow of traffic in front of a home and the vehicle appeared to be running. As the officers passed in their marked patrol car, they wrote down what they believed to be the car's license plate number and ran the tag, which came back to a different make and model of vehicle. At that point, the officers turned around to investigate further, but by the time they got back to the car, the vehicle had been turned around so as to prevent the officers from seeing the license tag. Officer Batson testified that such movement of the car was, based on his training and experience, also suspicious.

Without activating their blue lights, the officers parked their patrol vehicle some two to three car lengths behind the car being operated by defendant. Without prompting, defendant exited the drivers side of the vehicle and the passenger also exited. Defendant then approached the officers who were in their vehicle with arms out stretched and fists clinched, obviously angered by the police presence. Officer Batson then attempted to talk with defendant, who then went into the home in front of which the vehicle was parked. Officer Batson then approached th vehicle which defendant had just left and smells the odor of marijuana emanating from the vehicle and sees an open container of alcohol between the seats. Unlike the defendant, the passenger is cooperative and talks with the officers.

−2−

Now having an unobstructed view of the license plates, the officers discover that the plate they ran was off by one digit and run the correct plate. However, that tag also came back as belonging to a vehicle other than the one being operated by defendant.

With defendant being in the home at this point, Officer Batson talks with the homeowner, who is friends with defendant, who he describes as an elderly woman. He tells the homeowner to let the defendant know that he wants to talk with him and that he has probable cause to tow and search the vehicle. The officer then asks the defendant to retrieve his identification from the car based on the open container violation. The officer testified that defendant then went back to the car, retrieved his ID while "shielding" the officer's view as he opened the door, and then locked the car. After giving the ID to the officer, defendant was placed in handcuffs and Officer Batson asked defendant about "marijuana and needles."

At some point, perhaps when defendant initially went into the home, the keys to the car were either left in the home or given to the homeowner. Apparently, defendant did not need the keys to retrieve his ID or lock the car. In any event, the keys to the car were eventually turned over by the homeowner after Officer Batson told her that the car was going to be searched based on probable cause and that without the keys the officer would have to break the window. Inasmuch as the car belonged to defendant's girlfriend, the homeowner used defendant's cellphone to call the girlfriend to ask what to do with the keys, and the homeowner then gave the keys to the officer.

Immediately prior to the search of the vehicle, and while defendant was in handcuffs and having now been given any <u>Miranda</u> warning, Officer Batson told defendant:[1]

"If you don't talk to us, we can go sign out warrants for your arrest for the marijuana in your car."

"I'm detaining you for the open container, the false plates, and the odor of marijuana coming from your car. I'm going to search it. Now is the time to tell us. I'm going to cut you a citation if there is nothing else."

"The more you tell me now, the better it's going to be for you."

After these statements were made to the defendant and the officer indicated he was getting ready to search the vehicle, defendant called Officer Batson over and tells him that he has gun in the vehicle and that he knows he is not supposed to have a gun. Officer Batson then searches the vehicle and discovers the hand gun in the driver's side door compartment.

**II.     Discussion**

    **A.     The Stop**

The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A law enforcement officer may, consistent with the Fourth Amendment, initiate a brief investigatory stop if he has reasonable suspicion to believe that criminal activity "may be afoot." <u>Terry v. Ohio</u>, 392 U.S. 1, 30 (1968).

---

[1] The Court has drawn the following quotations from its notes rather than await a transcript and should be considered an approximation of the testimony.

A mere hunch or suspicion does not warrant a permissible basis for a Terry stop. Id.; Illinois v. Wardlow, 528 U.S. 119, 123-24 (2000). Though the facts of the situation need not give rise to probable cause, the officer must be able to provide the court with reasons that would support why he an objectively reasonable suspicion of criminal activity. See e.g., United States v. Arvizu, 534 U.S. 266, 274 (2002).

The existence of reasonable suspicion depends on the totality of the presented circumstances. United States v. Singh, 363 F.3d 347, 354 (4th Cir. 2004). In this case, the officers credibly articulated facts that support a finding that they had objectively reasonable suspicion of criminal activity. In particular, Officer Batson stated that they on robbery patrol looking for cars that did not belong in the neighborhood, that defendant's car was parked in front of a home against traffic and that the motor was running. Further, when they ran what they believed was the correct plate number, the plate came back to another car. In addition, before they even attempted to approach the car, defendant got out of the car and angrily approached their patrol car. The Supreme Court has recognized that this reasonable suspicion inquiry should allow officers "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" Arvizu, 534 U.S. at 273 (quoting United States v. Cortez, 449 U.S. 411, 417-18 (2002)).

In weighing the totality of the circumstances, officers rely on various factors which may give rise to reasonable suspicion that criminal activity may be afoot. See United States v. Brignoni-Ponce, 422 U.S. 873, 855 (1981) (noting whether the suspect engaged in evasive

behavior or acted nervously); United States v. McFarley, 991 F.2d 1188, 1192 (4th Cir. 1993) (identifying nervous behavior as shaking hands, heavy breathing, and providing inconsistent answers). Ultimately, the basis for a Terry stop is that the officer has a "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." United States v. Mayo, 361 F.3d 802, 806 (4th Cir. 2004) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).

The question before the court is, considering the totality of the circumstances, whether this stop constituted a legal Terry stop in conformance with the Fourth Amendment. Considering the totality of the circumstances presented to the officers in this case, the Terry stop was lawful.

### B. Defendant's Admissions

As to the discovery of the gun, the first question raised by defendant is whether his admission to the ownership of the gun was lawfully obtained.

The Fifth Amendment to the United States Constitution provides that no one "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Supreme Court held in Miranda v. Arizona, 384 U.S. 436 (1966), that such right was, at that point in time, in jeopardy of being effectively lost in the criminal justice system because

> coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk that an individual will not be accorded his privilege under the Fifth Amendment . . . not to be compelled to incriminate himself.

Id., at 435 (internal quotation marks omitted). To ensure the continued vitality of the constitutional privilege against self-incrimination, the Supreme Court held in Miranda that

> the admissibility in evidence of any statement given during custodial interrogation of a suspect would depend on whether the police provided the suspect with [Miranda warnings] . . . .

Id. (emphasis added).

Miranda does not, however, require police to warn everyone they question. Oregon v. Mathiason, 429 U.S. 492, 495 (1977). Instead, the Miranda warnings are only required "where there has been such a restriction on a person's freedom as to render him 'in custody.'" Id. Where it is shown that a defendant's statement is the product of a *custodial interrogation,* it is the government's burden to show that Miranda warnings preceded the questioning which lead to the statement. See Beckwith v. United States, 425 U.S. 341 (1976).

The first issue is whether defendant was in custody when Officer Batson made the above described statements to him. It is well settled that

> [t]wo discrete inquiries are essential to the [custody] determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.

Thompson v. Keohane, 516 U.S. 99, 112 (internal quotation marks and citation omitted). In conducting the evaluation,

> [c]ourts must examine 'all of the circumstances surrounding the interrogation' and

determine 'how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action.'

Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004) (quoting Stansbury v. California, 511 U.S. 318, 322& 325 (1994)). However,

> [a] policeman's unarticulated plan has no bearing on the question whether a suspect was "in custody" at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.

Berkemer v. McCarty, 468 U.S. 420, 442 (1984) (footnote omitted).

The Court has also considered the opinion of the late Chief Judge of this District, the Honorable Robert D. Potter, United States District Judge, who dealt with a fairly similar issue and laid out a standard for review, the wisdom of which has survived more than two decades:

> Where questioning occurs in the familiar surroundings of a person's home or place of business, the chances that a restraint will be similar to that of a formal arrest are greatly diminished. *United States v. Hocking*, 860 F.2d 769, 774–75 (7th Cir.1988) (three hours of questioning in individual's home); *United States v. Richmann*, 860 F.2d 837, 840–41 (8th Cir.1988) (*Miranda* warnings not required for statements made during search of defendant's office), *cert. denied*, 490 U.S. 1089, 109 S.Ct. 2429, 104 L.Ed.2d 986 (1987); *United States v. Phillips*, 688 F.2d 52, 55 (8th Cir.1982) (Defendant not in custody for purposes of Miranda because he was in his own home); *United States v. Berlin*, 707 F.Supp. 832, 838 (E.D.Va.1989) (forty minute questioning in defendant's home did not subject him to custodial interrogation). However, it is possible that questioning in a person's home may eventually rise to custodial interrogation, especially where the atmosphere is coercive and the questioning is not brief. Where the questioning is brief and no physical force is used, any coercive impact of the questioning is reduced. *See United States v. Wong Ching Hing*, 867 F.2d 754, 756 (2d Cir.1989) (30 minute traffic stop did not require Miranda warnings); *Hocking*, 860 F.2d at 773 (3 hour questioning did not amount to custodial interrogation). The First Circuit Court of Appeals has considered factors such as the familiar or neutral setting of the questioning, the small number of law enforcement officials present, the degree of physical restraint, and the duration of the questioning in determining whether Miranda warnings were required. See *United States v. Masse*, 816 F.2d 805, 809 (1st Cir.1987); *United States v. Quinn*, 815 F.2d 153, 161 (1st Cir.1987); *United States v. Streifel*, 781 F.2d 953, 961 (1st Cir.1986).

United States v. Musgrave, 726 F.Supp. 1027, 1032 (W.D.N.C. 1989).

When the totality of the circumstances are considered, United States v. Boone, 245 F.3d 352, 362 (4th Cir. 2001), it is clear from the perspective of a reasonable person in defendant's position that he was not at liberty to terminate the discussion with Officer Batson and leave, making Miranda warnings necessary. Here, defendant was in handcuffs on or about a public street. While Officer Batson told him he was being "detained," it was readily apparent from the testimony and body-cam video that defendant was in no manner free to walk away when Officer Batson made statements to defendant, such as "the more you tell me now, the better it's going to be for you," that were clearly intended to get defendant to make incriminating statements. Interrogation under Miranda includes express questioning or its functional equivalent. Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980).

This court fully recognizes that suspects can be temporarily detained and placed in handcuffs for officer safety without such detention amounting to an arrest, and that officers can make statements or ask questions such as "I'm not going to find anything like needles or things that can hurt me" without running afoul of Miranda. The procedural rules that must be followed under Miranda only attach during "custodial interrogations," United States v. Sullivan, 138 F.3d 126, 130 (4th Cir. 1998), and custodial situations arise only where "a person has been arrested or if his freedom of action has been curtailed to a degree associated with arrest." Id.; Stansbury v. California, 511 U.S. 318 (1994).

"The test for determining whether an individual is in custody for Miranda purposes is whether, under the totality of the circumstances, the 'suspect's freedom of action is curtailed to a degree associated with formal arrest.'" United States v. Faucette, 26 F. App'x 91, 91–92 (4th Cir. 2001) (*per curiam*) (quoting Berkemer v. McCarty, 468 U.S. 420, 440 (1984)). Based on a totality

of the circumstances, it is clear that at the time he made his statement in response to statements made by Officer Batson that were the functional equivalent of questions, his freedom of action was curtailed to a degree associated with formal arrest. Under Miranda, statements made in response to unwarned questioning while in custody are *per se* involuntary. In the context of custodial interrogation, "unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence." Oregon v. Elstad, 470 U.S. 298, 307 (1985). Based on a totality of the circumstance in this case, the Court will suppress the incriminating statements made by defendant while he was in handcuffs on December 16, 2016.

### C. Suppression of the Gun

Defendant next contends that the gun should also be suppressed as fruit of the poisonous tree inasmuch as his statement lead officers to find the gun, which would also amount to a violation of Miranda. See Wong Sun v. United States, 371 U.S. 471, 484 (1963). Based on the inevitable and imminent discovery of the gun, however, the court does not agree.

Even where the discovery of the gun can be linked to an improperly obtained confession, evidence is admissible if it can be shown by a preponderance of the evidence that it ultimately or inevitably would have been discovered by lawful means. Nix v. Williams, 467 U.S. 431, 444 (1984). In this case, once Officer Batson smelled the odor of marijuana emanating from the car from which defendant had just exited, he had probable cause to search that car. If an officer smells the odor of marijuana in circumstances where the officer can localize its source to a person, the officer has probable cause to believe that the person has committed or is committing the crime of possession of marijuana. United States v. Humphries, 372 F.3d 653, 659 (4th Cir. 2004). The same

applies to a car. Id. An odor of marijuana emanating from a car constitutes probable cause that marijuana is inside of the car and provides officers with justification to search the interior.

> We have repeatedly held that the odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place….While smelling marijuana does not assure that marijuana is still present, the odor certainly provides probable cause to believe that it is. Thus, when marijuana is believed to be present in an automobile based on the odor emanating therefrom, we have found probable cause to search the automobile….

Id. Thus, the search of the car was lawful as the officers had probable cause, it was clear that the officers would have searched the car even if defendant had not told them a gun was located in the car, and the discovery of the handgun was imminent inasmuch as it was located in the driver's door pocket.

## ORDER

**IT IS, THEREFORE, ORDERED** that defendant's Motion to Suppress (#12) is

(1) **GRANTED** in part and defendant's statement as to the location and ownership of the gun made on December 13, 2016 is **SUPPRESSED**; and

(2) is otherwise **DENIED** as to suppression of the gun inasmuch as such physical evidence would have been inevitably discovered.

Signed: August 25, 2017

Max O. Cogburn Jr.
United States District Judge